UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:23-cv-80503-MIDDLEBROOKS

MELANIE E. DAMIAN, AS RECEIVER OF
RAJIV PATEL, a/k/a RAVI PATEL, a/k/a
RAJ PATEL, MELANIE E. DAMIAN,
AS RECEIVER OF BLUPRINT, LLC, and
MELANIE E. DAMIAN, RECEIVER, AS ASSIGNEE
OF CLAIMS OF KALPANA PATEL

      Plaintiff,

v.

TD AMERITRADE, INC. and CHARLES SCHWAB
FUTURES AND FOREX LLC f/k/a TD AMERITRADE
FUTURES & FOREX, LLC

      Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

**Page**

Table of Authorities ............................................................................................................. iv

I.   Introduction ...........................................................................................................................1

II.  Memorandum of Law ...........................................................................................................1

    A.  The Court Lacks Subject Matter Jurisdiction Because the
    Receiver Has No Standing .............................................................................................1

        1.  The Legal Standard for a Motion to Dismiss for Lack
        of Standing ............................................................................................................1

        2.  The Receiver Lacks Standing to Assert Bluprint's Claims
        Because There Is No Allegation That Bluprint Had a
        Separate Business Purpose Independent of Patel and
        Because There Is No Innocent Officer, Director, or
        Stockholder.............................................................................................................2

        3.  The Receiver Lacks Standing to Assert Claims on Behalf
        of Patel..................................................................................................................4

        4.  The Receiver Lacks Standing to Assert Ms. Patel's
        Claims Because There Is No Injury In Fact .........................................................5

        5.  The Receiver Lacks Standing to Assert Claims of
        Absent Third Parties..............................................................................................6

        6.  Counts IV, V, and VI Should Be Dismissed Because
        No Plaintiff Has Standing to Assert Them ...........................................................8

    B.  Dismissal Is Required Because the Complaint Fails to State a
    Claim Upon Which Relief Can Be Granted....................................................................8

        1.  The Legal Standard for a Motion to Dismiss for Failure to
        State a Claim .........................................................................................................8

        2.  All Claims Should Be Dismissed Because They Violate
        Rule 8(a) ...............................................................................................................9

        3.  Counts I, II, VI, and VII Should be Dismissed Because
        They Fail to Meet Rule 9(b)'s Heightened Pleading
        Standard for Claims Sounding in Fraud. ............................................................11

4. Counts IV and V for Fraudulent Transfer Must Be
   Dismissed. ..................................................................................................15

   i. The Receiver Fails to Plead that Bluprint Is
      a Creditor. ....................................................................................15

   ii. The Constructive Fraudulent Transfer Claim Must
       Be Dismissed Because There Is No Allegation
       That Patel Did Not Receive Reasonably
       Equivalent Value ...........................................................................16

   iii. The Actual Fraudulent Transfer Claim Fails Because
        the Receiver Fails to Plead Facts Showing that
        Bluprint Is a Creditor of Patel ......................................................17

5. Count VII for Aiding and Abetting a CEA Violation Should
   Be Dismissed Because the Receiver Has No Statutory
   Entitlement to Recovery and Fails to Adequately Plead
   Intent...........................................................................................................18

   i. The Aiding and Abetting CEA Claim Should Be
      Dismissed Because the Receiver Pleads that
      Patel Entered Trades for Investors, Not Bluprint ..........................18

   ii. The Aiding and Abetting CEA Claim Should Be
       Dismissed Because the Receiver Fails to
       Adequately Plead the Required Intent ............................................19

6. Count II for Aiding and Abetting a Breach of Fiduciary
   Duty Must Be Dismissed for Failure to Plead Facts
   Sufficient to State a Claim..........................................................................21

7. Count VIII Must Be Dismissed Because There Is No
   Private Right of Action for the Enforcement of
   17 CFR Section 1.55(a) ...............................................................................23

8. Patel, Ms. Patel, and Bluprint's Claims Must Be
   Dismissed Because the Receiver Fails to Establish
   Damages As a Matter of Law.......................................................................24

III. Conclusion ......................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269
(S.D. Fla. 2013)........................................................................................................14

*Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252
(5th Cir. 2011)..................................................................................................20, 22

*Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309
(11th Cir. 2007).....................................................................................................13

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283
 (11th Cir. 2010).......................................................................................................9

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ........................................18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................9

*Bartsch v. Costello*, 170 So. 3d 83 (Fla. 4th DCA 2015) ............................................24

*Bedwell v. Rucks*, 127 So. 3d 533 (Fla. 4th DCA 2012)..............................................24

*Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302
(S.D. Fla. 2011).......................................................................................................18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................9

*Bendall v. Lancer Mgmt. Grp., LLC*, 523 F. App'x 554 (11th Cir. 2013).....................6

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364
(11th Cir. 1997).......................................................................................................12

*Buckmaster v. Rosenthal Collins Grp., L.L.C.*, No. CIV-05-1227-R,
2006 WL 8436520 (W.K. Okla. Sept. 27, 2006) .................................................23–24

*CFTC v. Grossman*, No. 14-civ-62061-Bloom/Valle,
2015 WL 11197766 (Feb. 26, 2015)..................................................................13, 19–21

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d
91 (2d Cir. 2007)......................................................................................................24

*Corsello v. Lincare*, 428 F.3d 1008 (11th Cir. 2005) ...................................................11

iv

**Page**

*Cutler v. Voya Fin., Inc.*, 18-20723-Civ-Williams/Torres,
2019 WL 1112379  (S.D. Fla. Jan. 15, 2019) ...............................................................................12

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)...................................................................2

*Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183 (11th Cir. 2003) ....................................................9

*Davis v. Fed. Election Comm'n*, 554 U.S. 724 (2008) ....................................................................2

*Day v. Taylor*, 400 F.3d 127 (11th Cir. 2005) ................................................................................7

*Dillion v. Axxsys Int'l, Inc.*, 185 F. App'x 823 (11th Cir. 2006) ..................................................15

*Dowbenko v. Google, Inc.*, 582 F. App'x 801 (11th Cir. 2014) ....................................................12

*Farmland Indus. v. Frazier-Parrott Commodites, Inc.*, 871 F.2d 1402
(8th Cir. 1989)................................................................................................................................24

*Fleming v. Lind-Waldock & Co.*, 922 F.2d 20 (1st Cir. 1990) .......................................................7

*Garfield v. NDC Health Corp.*, 466 F.3d 1255 (11th Cir. 2006)..................................................12

*Gunderson v. ADM Inv. Servs., Inc.*, C96–3148–MWB, 2001 WL 624834
(N.D. Iowa Feb. 13, 2001) .............................................................................................................23

*Hakim-Daccach v. Knauf Intern. GmbH*, No. 17-20495-Civ-Scola,
2017 WL 5634629 (S.D. Fla. Nov. 22, 2017)................................................................................24

*Holmes v. Villages Tri-County Med. Cntr, Inc.*, No. 5:21-cv-508-JA-PRL,
2023 WL 315019 (M.D. Fla. Jan. 19, 2023)....................................................................................5

*Home Fed. Sav. & Loan Ass'n of Hollywood v. Emile*, 216 So.
2d 443 (Fla. 1968).........................................................................................................................22

*Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318 (11th Cir. 2009) ...........................................11–12

*In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170
(2d Cir. 2013) ...........................................................................................................................19–21

*In re Berkman*, 517 B.R. 288 (M.D. Fla. 2014)............................................................................16

*Irvine v. Cargill Inv. Servs., Inc.*, 799 F.2d 1461 (11th Cir. 1986)...............................................24

*Isaiah v. JP Morgan Chase Bank*, 960 F.3d 1296 (11th Cir. 2020) .......................................2–4, 7

**Page**

*Isaiah v. JPMorgan Chase Bank, N.A.*, No. 16-CIV-21771-Martinez,
2017 WL 5514370 (S.D. Fla. Nov. 15, 2017) .......................................................21, 23

*Khalid Bin Alwaleed Foundation v. E.F. Hutton & Co., Inc.*, 709 F. Supp.
815 (N.D. Ill. 1989)...........................................................................................23

*Krinsk v. SunTrust Banks, Inc.*, No. 8:09-CV-909-T-27EAJ,
2010 WL 11475608 (M.D. Fla. Jan. 8, 2010) ............................................................13

*Lamm v. State Street Bank & Trust*, 749 F.3d 938 (11th Cir. 2014).........................20–23

*Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904 (11th Cir. 2012).........................21–23

*Laufer v. Arpan LLC*, 29 F.4th 1268 (11th Cir. 2022)...........................................2, 5

*Litchman v. Litvin Law Firm P.C.*, No. 13–61119–CIV,
2014 WL 1230724 (S.D. Fla. Mar. 25, 2014).........................................................7–8

*Llado-Carreno v. Guidant Corp.*, 09-20971-CIV, 2011 WL 705403
(S.D. Fla. Feb. 22, 2011)......................................................................................12

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .....................................................2

*Marshall Cty. Bd. Of Educ. V. Marshall Cty. Gas Dist.*, 992 F.2d 1171
 (11th Cir. 1993)...................................................................................................9

*Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917 (11th Cir. 2020)..........................5

*O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197
(11th Cir. 2003).................................................................................................22

*Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298
(11th Cir. 2022).................................................................................................14

*Perlman v. PNC Bank, N.A.*, 38 F.4th 899 (11th Cir. 2022)....................................3–4

*Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007) ...............................24–25

*Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877 (N.D. Cal. 2016).........................24

*Sec. & Exch. Comm'n v. Nat. Diamonds Invs. Co.*, No. 9:19-cv-80633
-Rosenberg, 2019 WL 2583863 (S.D. Fla. June 11, 2019)...........................................6

**Page**

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d
1229 (11th Cir. 2008) ..................................................................................1

*U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350 (11th Cir. 2006) ..................................11

*U.S. ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783 (11th Cir. 2014)..........................12

*Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329 (11th Cir. 2012) ..................................14

*Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 155 F. Supp.
3d 1344 (S.D. Fla. 2015) ...........................................................................12

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313
(11th Cir. 2015).................................................................................9–10

*Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238 (M.D. Fla. 2013) ................................22

*Yuanxiao Feng v. Walsh*, 19-24138-CIV, 2020 WL 5822420
(S.D. Fla. Sept. 14, 2020)...........................................................................13

**Statutes and Rules**

§ 726.102(4), Fla. Stat..................................................................................15, 24

§ 726.105(1)(a), Fla. Stat. ...........................................................................16–17

§ 726.105(1)(b), Fla. Stat. ...........................................................................16

17 CFR Section 1.55(a)..................................................................................23

7 U.S.C. Section 22(a)(1)................................................................................25

R. 8(a)(2), Fed. R. Civ. P..................................................................................9

R. 9(b), Fed. R. Civ. P......................................................................................10–14

R. 12(b)(1), Fed. R. Civ. P..................................................................................1

R. 12(b)(6), Fed. R. Civ. P.................................................................................8–9

## I.      INTRODUCTION

The Complaint alleges that Defendants TD Ameritrade, Inc. ("TD") and Charles Schwab Futures and Forex LLC ("CSFF") (collectively, "Defendants") are liable for damages resulting from Rajiv Patel's ("Patel") Ponzi scheme merely because Patel used their platforms to trade the funds of his "investors." Plaintiff, as Receiver, brings the claims on behalf of Bluprint, LLC ("Bluprint"), a company created by Patel with no account or relation to Defendants, and as assignee of the claims of Patel's wife, Kalpana Patel ("Ms. Patel"). For the reasons set forth herein, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 8, 9(b), 12(b)(1), and 12(b)(6) because (1) the Receiver lacks standing to bring any of the asserted claims on behalf of Bluprint, Ms. Patel, and, as occasionally alleged, creditors and investors for whom she does not have authority nor represent, (2) the Receiver fails to state claims upon which relief can be granted, (3) the Complaint is an impermissible shotgun pleading that lumps both Defendants together, as well as Bluprint and Patel together, in its allegations, and (4) the Complaint fails to meet the heightened pleading standard for fraud-based claims.

## II.     MEMORANDUM OF LAW

### A.      THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE RECEIVER HAS NO STANDING.

#### 1.      The Legal Standard for a Motion to Dismiss for Lack of Standing.

Because "standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under" Rule 12(b)(1). *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citation omitted). Under Rule 12(b)(1), a defendant may raise either a facial or factual challenge to subject matter jurisdiction. Defendants here raise a facial challenge, which "requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations

in his complaint are taken as true for the purposes of the motion." *Id.* at 1232–33 (citation omitted).

To have constitutional standing, one must have "(1) an injury in fact (2) that is fairly traceable to the defendant's conduct and (3) that is redressable by a favorable decision." *Laufer v. Arpan LLC*, 29 F.4th 1268, 1272 (11th Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). To suffer an injury in fact, a plaintiff must have suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical[.]'" *Lujan*, 504 U.S. at 560 (citations omitted).

It is the party invoking federal jurisdiction who bears the burden of establishing these elements. *See Lujan*, 504 U.S. at 561. A "'plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief' that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

## 2. The Receiver Lacks Standing to Assert Bluprint's Claims[1] Because There Is No Allegation That Bluprint Had a Separate Business Purpose Independent of Patel and Because There Is No Innocent Officer, Director, or Stockholder.

It "is axiomatic that a receiver obtains only the rights of action and remedies that were possessed by the person or corporation in receivership." *Isaiah v. JP Morgan Chase Bank*, 960 F.3d 1296, 1306 (11th Cir. 2020). Under Eleventh Circuit precedent, a receiver lacks standing to recover damages for a corporation allegedly injured by a Ponzi scheme when the corporation has no innocent officer, director, or stockholder and thus "cannot be separated" from the Ponzi schemer

---

[1] Bluprint's claims include Counts II and VII, and potentially IV, V, and VI. Count I for breach of fiduciary duty, Count III for negligence, and Count VIII for a violation of the Commodity Exchange Act ("CEA") are alleged to be on behalf of Ms. Patel because the "Wherefore" clauses in those Counts seek recovery for "compensatory damages and/or restitution, interest, and costs" of Ms. Patel. Complaint at 29 (Count I), 34–35 (Count III), 44 (Count VIII). Count II purports to be on behalf of Bluprint, its investors and creditors, and Ms. Patel based on the "Wherefore" clause. *Id.* at 36. Count VII purports to be on behalf of Bluprint and its investors based on the "Wherefore" clause. *Id.* at 42. It is entirely unclear on whose behalf the Receiver brings Counts IV, V, and VI given that the "Wherefore" clauses and other allegations are vague and ill-defined.

who dominated and controlled the corporation. *Perlman v. PNC Bank, N.A.*, 38 F.4th 899, 903–905 (11th Cir. 2022); *Isaiah*, 960 F.3d at 1308. When, as here, a corporation is dominated and controlled by a Ponzi schemer and has no innocent directors, officers, or stockholders, the corporation constitutes a vehicle for the Ponzi scheme itself, is deemed to have committed the fraud, and, thus, cannot recover for injuries from the Ponzi scheme. *See id.* at 1306–307. And with no injuries, the corporation lacks an injury in fact required for constitutional standing. *Id.* As the Eleventh Circuit explained in *Perlman*:

> If the corporation in receivership is one that is operated for the sole purpose of committing fraud, and thus not an 'honest corporation,' then that corporation 'cannot be said to have suffered an injury from the scheme it perpetrated.' Since the receiver 'obtains only the rights of actions and remedies' of the corporation in receivership, it follows that the receiver likewise would not have suffered an injury for purposes of bringing such claims.

38 F.4th at 904 (affirming dismissal); *Isaiah*, 960 F.3d at 1306–307 (affirming dismissal).

The Receiver's claims against TD and CSFF are that: (1) Patel and Ms. Patel opened a joint brokerage account and futures trading account with Defendants; (2) third-party investors wired money directly into those accounts; (3) Patel traded the investors' funds in the accounts; (4) Defendants charged commissions for those trades; and (5) Defendants should have prevented Patel from trading because of so-called "red flags." Complaint ¶¶ 100–25. This case is substantially similar to the *Perlman* matter, where Jeremy Marcus, the alleged perpetrator of a debt relief scam, used his corporate entity to effectuate his fraud, and the receiver for that entity brought claims against PNC Bank for "aid[ing] and abet[ing] Marcus by providing banking services, despite many red flags showing Marcus was committing fraud." 38 F.4th at 902–903. The Eleventh Circuit affirmed dismissal of those claims on the grounds that the receiver had no standing to bring them because the corporation had no innocent director or stockholder. *Id.* at 905.

The same is true here. The Receiver for Bluprint alleges that the Ponzi scheme in question

was Bluprint's and was "organized and perpetrated by Patel" who dominated and controlled Bluprint. Complaint ¶ 34 ("Bluprint's Ponzi scheme was organized and perpetrated by Patel, its control person, as a result of his fraudulent domination, adverse interest in, and control of Bluprint and as part of his continued breaches of fiduciary duties to Bluprint."). Just as in *Perlman*, here, the Receiver did not, and cannot, allege that Bluprint had an innocent director, officer, or stockholder. In fact, the Receiver acknowledges that Patel dominated and controlled Bluprint and, thus, Patel "cannot be separated from the Receivership Entit[y] . . . ." *Perlman*, 38 F.4th at 904. The Receiver even concedes this fact:

> Patel controlled and operated Bluprint as a means to carry out the fraudulent scheme . . . . Bluprint was under the control of Patel until the appointment of the Receiver and *thus unable to cease the fraudulent activity* and/or seek recovery of the misappropriated funds or fraudulent transfers prior to that point.

Complaint ¶ 53 (emphasis added).

As the Complaint admits that Patel controlled and dominated Bluprint and does not establish the existence of any innocent director, officer, or stockholder, the Receiver lacks standing to assert the claims on behalf of Bluprint set forth in the Complaint, warranting their dismissal.

### 3. The Receiver Lacks Standing to Assert Claims on Behalf of Patel.

The Receiver also lacks standing to assert any claims on Patel's behalf for the reasons discussed above and articulated in *Perlman* and *Isaiah*. Although the case caption identifies the Receiver for Patel as a Plaintiff, the Complaint does not appear to actually assert any claims on his behalf. *See supra* at 2 n.1. To the extent it does, however, those claims should be dismissed because Patel would have lacked standing to assert them. The Eleventh Circuit predicated *Perlman* and *Isaiah* on the principle that because the corporate entities were inseparable from the fraudsters in question, the corporate entities were responsible for the fraud and therefore could not claim an injury in fact. *See Perlman*, 38 F.4th at 904; *Isaiah*, 960 F.3d at 1308. It logically follows, then,

that where the fraudster *himself* tries to sue, the fraudster has no standing either. Defendants accordingly request the Court to dismiss all claims brought on behalf of Patel, if any.

**4.      The Receiver Lacks Standing to Assert Ms. Patel's Claims[2] Because There Is No Injury In Fact.**

At best, Ms. Patel's alleged injuries are "conjectural or hypothetical," rendering them legally insufficient to establish an injury in fact—one of the required elements for constitutional standing. *Laufer*, 29 F.4th at 1272. Instead of "concrete and particularized" or "actual or imminent" liability, the Complaint merely alleges that the Defendants "exposed [Ms. Patel] to *potential liability* to Bluprint investors and the Receiver" and that Ms. Patel "has had to face *potential* liability and claims from the Receiver and from Bluprint's investors . . . ." Complaint ¶¶ 162, 208 (emphasis added). As a matter of law, these allegations are insufficient to show an actual injury. Injury that is merely "potential," such as that alleged here on behalf of Ms. Patel is hypothetical and fails to constitute an injury in fact. *E.g.*, *Holmes v. Villages Tri-County Med. Cntr, Inc.*, No. 5:21-cv-508-JA-PRL, 2023 WL 315019, at *3 (M.D. Fla. Jan. 19, 2023) ("'[F]ears of hypothetical future harm' are not concrete injuries.") (alteration in original) (quoting *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020) (en banc)).

Further, the allegations fail to establish that Ms. Patel still faces this "potential" injury. Instead, the Complaint admits that Ms. Patel "*has had* to face potential liability," referring to events occurring in the past. Complaint ¶ 208 (emphasis added). It also fails to identify what potential liability she purportedly faced in the first place, alleging that the Receiver only had "potential claims" against Ms. Patel, but that Ms. Patel avoided those "potential," but unidentified, claims by assigning her own purported claims against Defendants to the Receiver. *Id.*

In short, the Receiver pleads no facts that, if accepted as true, show that Ms. Patel suffered

---

[2] The claims on behalf of Ms. Patel are Counts I, II, III, and VIII, and potentially IV, V, and VI.

an actual injury from the Defendants' alleged conduct. While the Receiver alleges that Ms. Patel "has had to turn over to the Receiver the personal property she jointly owned with Patel" and "will be required to pay significant funds to the Receivership Estate," she also admits that Ms. Patel has no right to either that property or those funds, as Ms. Patel was simply a "relief defendant" in the CFTC action. *Id.* ¶¶ 208–209; *Sec. & Exch. Comm'n v. Nat. Diamonds Invs. Co.*, No. 9:19-cv-80633-Rosenberg, 2019 WL 2583863, at *5 (S.D. Fla. June 11, 2019) ("A relief defendant, sometimes referred to as a 'nominal defendant,' *has no ownership interest in the property that is the subject of litigation* but may be joined in the lawsuit to aid the recovery of relief.") (emphasis added). Because Ms. Patel has no right to the property which her husband gained by defrauding his investors, which the Receiver alleges she either has or will obtain, Ms. Patel cannot plausibly allege that she suffered an injury from having to return ill-gotten property.

Based on the foregoing, the Receiver fails to plead sufficient facts to establish standing on behalf of Ms. Patel, and, as a result, all claims asserted on Ms. Patel's behalf should be dismissed.

**5.    The Receiver Lacks Standing to Assert Claims of Absent Third Parties.**

The Court must dismiss all claims[3] that the Receiver brings on behalf of non-receivership entities, including claims that Bluprint or Patel's investors or creditors may have against Bluprint, Patel, or Ms. Patel. Receiverships exist to help protect and gather a receivership entity's assets, in part, so that third parties, like creditors, have a better chance of recovering on the claims they raise against the receivership entities. *See, e.g.*, *Bendall v. Lancer Mgmt. Grp., LLC*, 523 F. App'x 554, 557 (11th Cir. 2013) ("[A] primary purpose of both receivership and bankruptcy proceedings is to promote the efficient and orderly administration of estates for the benefit of creditors . . . ."). A receiver, however, does not possess the right to litigate third parties' claims and accordingly bind

---

[3] *See* Counts II and VII of the Complaint. *Supra* at 2 n.1.

third parties to the *res judicata* effect of judgments. Instead, receivers simply stand in the shoes of the receivership entities over which they are appointed to advance those entities' claims—not those of third parties. *See Isaiah*, 960 F.3d at 1310 ("While collecting damages from third parties may indirectly benefit the defrauded investors and other creditors of the Receivership Entities—e.g., by enlarging the 'pie' from which the creditors may ultimately recover—the receiver does not pursue such actions on behalf of the creditors because he does not represent those creditors."); *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 25 (1st Cir. 1990) (summarizing extensive federal caselaw holding equity receivers lack power to litigate third party claims).

This is true for both case-specific and constitutional reasons. First, the Order Appointing Receiver in question[4] appointed Ms. Damian as the Receiver of Bluprint and Patel and their assets. *See generally* Order Appointing Receiver, *CFTC v. Rajiv Patel, et al.*, No. 22-80092-CV-Middlebrooks (S.D. Fla. Mar. 30, 2022), ECF No. 50 (attached as **Exhibit 1**). This Court did not appoint Ms. Damian as the representative of any class of investors, creditors, or other unrepresented third parties, nor did it otherwise provide Ms. Damian the power to litigate claims on their behalf or bind them in litigation. Such an appointment would have violated the constitutional rights of said third parties, federal law, and limitations on standing.

Second, the Receiver has no inherent standing to litigate on behalf of third-party investors or creditors. To demonstrate standing, a party must satisfy both constitutional and prudential requirements. *See Litchman v. Litvin Law Firm P.C.*, No. 13–61119–CIV, 2014 WL 1230724, at *3 (S.D. Fla. Mar. 25, 2014). For constitutional standing, a party must show "(1) an injury in fact,

---

[4] The Court may consider the Order Appointing Receiver under the incorporation by reference doctrine. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Litchman*, 2014 WL 1230724, at *3 (considering receiver appointment orders as incorporated by reference on a motion to dismiss).

(2) a traceable connection between the injury and the complained-of conduct, and (3) redressability, or likelihood that the requested relief would redress the alleged injury." *Id.* Unlike constitutional requirements, "prudential limitations are judicially self-imposed and arise from the concerns about a properly limited role of the courts in a democratic society." *Id.* Prudential standing considerations include "(1) assertion of a third party's rights, (2) allegation of a generalized grievance rather than an injury particular to the litigant, and (3) assertion of an injury outside the zone of interests of the statute or constitutional provision." *Id.* As a matter of law, both doctrines bar receivers from raising third party claims. *See Liberte Cap. Grp., LLC v. Capwill*, 248 F. App'x 650, 655–58 (finding Receiver lacked an injury in fact necessary to satisfy the constitutional standing requirement because the injury alleged belonged to third parties, not the receivership entities); *Litchman*, 2014 WL 1230724, at *4 (granting motion to dismiss a receiver's claims on behalf of third party consumers because the receiver's attempt to "assert the rights of third parties . . . cannot satisfy the prudential requirements of standing."). Accordingly, all claims that the Receiver attempts to bring on behalf of third parties, including investors or creditors of Bluprint or Patel, should be dismissed.

> **6.    Counts IV, V, and VI Should Be Dismissed Because No Plaintiff Has Standing to Assert Them.**

The Receiver fails to specify on whose behalf she brings Counts IV, V, and VI. *See supra* 2 n.1. Because the Receiver has not properly alleged that any person or entity suffered an injury in fact, Counts IV through VI should be dismissed.

**B.    DISMISSAL IS REQUIRED BECAUSE THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

> **1.    The Legal Standard for a Motion to Dismiss for Failure to State a Claim**

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) tests the legal sufficiency of the complaint and assumes all well-pled *factual* allegations

to be true, drawing all reasonable inferences in favor of the plaintiff. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). To survive a Rule 12(b)(6) challenge, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). "When, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action" dismissal under Rule 12(b)(6) is appropriate. *Marshall Cty. Bd. Of Educ. V. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### 2. All Claims Should Be Dismissed Because They Violate Rule 8(a).

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," for purposes of giving each defendant notice of and the basis for the claims brought against it. When a plaintiff asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against," the complaint constitutes an impermissible "shotgun complaint" subject to dismissal. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Lumping defendants together in group-pleading form without articulating the factual basis for each's liability fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," violating Rule 8. *Id.*

Here, Plaintiff has named two separate defendants in the action: TD (a corporation) and

CSFF (a limited liability company). Complaint at 1. The Complaint admits that Patel had two different relationships with Defendants.[5] Yet, the Complaint refers to these two separate entities collectively in different, vague, and confusing ways,[6] and impermissibly lumps them together in all later allegations as if both Defendants were in fact one, had the exact same relationship with Patel, maintained identical accounts for Patel, had singular account activity, and/or had conducted themselves identically. Plaintiff also does not delineate which claims are brought against which Defendant, nor for what particular alleged misconduct or transactions, leaving each Defendant to assume that every claim is brought against both without any individual, specific allegations against which each Defendant can adequately defend.[7] This is impermissible under Rule 8 and the Complaint should be dismissed. *Weiland*, 792 F.3d at 1323.

The Complaint contains the same improper and vague group pleading with respect to Bluprint and Patel. At times, Bluprint is referred to as a general fraudulent "scheme." *E.g.*, Complaint ¶ 40 ("Prior to the creation of the Bluprint investment scheme…."). At others, it is referred to as a distinct corporate entity. *E.g.*, *id.* ¶ 36 ("Bluprint is a Florida limited liability company formed in June 2018 that operated from Patel's residence in Wellington, Florida."). The Receiver fails to clearly delineate between the two throughout the Complaint, weaving Bluprint's name into allegations without any specific facts concerning Bluprint as a corporate entity, its

---

[5] *See, e.g.*, Complaint ¶ 39 (admitting that the TD account "was opened by the Patels nearly 20 years ago for personal investing."); ¶ 102 ("on August 16, 2019, Parel opened the futures account with TD Ameritrade Futures and Forex, LLC (which was later transferred to [CSFF].").

[6] *E.g.*, Complaint ¶¶ 14–17 (referring to both entities as "TDA," but then subsequently as "Schwab," incorrectly identifying certain entities as corporations or limited liability companies, and lumping together "predecessor companies," affiliates and "umbrella" relationships).

[7] Based on the allegations, TDA may refer to: (1) both defendants collectively; (2) TD, or (3) CSFF. This type of allegation runs afoul of both Rules 8 and 9(b) as addressed later.

relationship to the investors, how Bluprint as a corporate entity was damaged, or how it conferred any benefit on Defendants. Instead, Plaintiff simply makes repeated allegations that the Patels' brokerage account with TD (not CSFF) "received a wire" in various amounts from each "Bluprint investor." *Id.* ¶¶ 77–97. Notably, Plaintiff does not allege that these "investors" ever invested money in Bluprint or acquired an ownership interest in Bluprint. Nor does she allege that the "investors" transferred money to Bluprint and that Bluprint then transferred the money to the TD account. To the contrary, it is clear from Plaintiff's allegations that each individual "investor" transferred money directly into the Patels' personal TD account. *See id.* Plaintiff similarly does not allege that Bluprint held an account with either Defendant, had any contractual relationship with either Defendant, or that it ever transferred or deposited any money into any accounts held with either Defendant for the Patels or otherwise. There is not even a single factual allegation explaining how Defendants would have even known that Bluprint existed. This pleading deficiency is exacerbated when, as here, the claims sound in fraud, because, in addition to Rule 8, the allegations must also meet Rule 9(b)'s heightened pleading standard.

The Receiver's failure to adequately plead which Defendants are facing which claims in Counts IV, V, and VI requires dismissal under Rule 8(a). *See supra* at 2 n.1.

**3.      Counts I, II, VI, and VII Should be Dismissed Because They Fail to Meet Rule 9(b)'s Heightened Pleading Standard for Claims Sounding in Fraud.**

Causes of action that "sound in fraud" must be pled with particularity to meet the heightened pleading standard under Fed. R. Civ. P. 9(b). *Corsello v. Lincare*, 428 F.3d 1008, 1012 (11th Cir. 2005). Rule 9(b) requires particularity to alert *each* defendant to the precise misconduct alleged, and to protect them "against spurious charges of immoral and fraudulent behavior." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359–60 (11th Cir. 2006) (citation omitted). A plaintiff must specify with particularity the "who, what, when, where, and how" of the alleged fraudulent

conduct." *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1324, 1327 (11th Cir. 2009). The required level of particularity includes the precise statements, documents, or misrepresentations made and the time, place, and person responsible for the statement. *Dowbenko v. Google, Inc.*, 582 F. App'x. 801, 805–806 (11th Cir. 2014) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)). Furthermore, when the claims involve allegations of predicate violations, the "[u]nderlying schemes and other wrongful activities" that "are included in the circumstances constituting fraud or mistake" must also be pled with particularity. *U.S. ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 793 (11th Cir. 2014). Each element must be satisfied as to each defendant, and "the plaintiff must allege particular facts with respect to each individual defendant's participation in the fraud." *Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 155 F. Supp. 3d 1344, 1361 (S.D. Fla. 2015) (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)). Thus, "a plaintiff is required to set forth specific allegations as to each defendant that will fulfill the 'who, what, when, where and how' pertaining to the underlying fraud." *Id.* Rule 9(b)'s particularity requirement "applies to all claims that sound in fraud, regardless of whether those claims are grounded in state or federal law." *Llado-Carreno v. Guidant Corp.*, 09-20971-CIV, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (citations omitted).

Plaintiff's impermissible lumping of the two Defendants together, and Patel and Bluprint together, is even more of an egregious pleading deficiency under Rule 9(b)'s heightened standard. The Complaint's failure to specify each Defendant's purported wrongful conduct in connection with its fraud-based claims is an independent ground for dismissal, and Counts I,[8] II, VI, and VII

---

[8] Rule 9(b) applies to breach of fiduciary duty claims. *Cutler v. Voya Fin.*, Inc., 2019 WL 1112379, at *3 (S.D. Fla. Jan. 15, 2019), *report and recommendation adopted*, 2019 WL 1115885 (S.D. Fla. Feb. 5, 2019) ("[C]ourts have consistently found that Rule 9(b) is also applicable to torts that are not even necessarily fraudulent – such as a breach of fiduciary duty – as long as their underlying factual allegations include averments of fraud.") (citations omitted).

must be dismissed as a result. *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (affirming dismissal of complaint on Rule 9(b) grounds that "lumped together" all of the defendants.); *Krinsk v. SunTrust Banks, Inc.*, No. 8:09-CV-909-T-27EAJ, 2010 WL 11475608, at *6 (M.D. Fla. Jan. 8, 2010) (declining to pierce corporate veil where plaintiff had merely pled that shareholder operated and directed the business entity).

With respect to Count I for Breach of Fiduciary Duty, Plaintiff impermissibly and confusingly lumps Defendants together as "TDA," thereby failing to adequately allege which, if any, of the Defendants owed anyone (and if so, whom) a duty, committed any breach, or engaged in any conduct constituting a breach of fiduciary duty. This is exacerbated by the lumping together of Patel and Bluprint. The Receiver, for example, alleges that investors' wires to the Patels' account at "TDA" were "earmarked for investment in Bluprint." Complaint ¶ 131. It is unclear, however, what this means—*i.e.*, whether Patel's investors thought they were wiring funds to a Bluprint account at TD, or an account at CSFF, or both; whether they knew the funds went to Patel's personal brokerage account, or his futures trading account, or both, but Patel was supposed to keep them "earmarked," in some unidentified fashion, etc. The Receiver herself even admits that she lacks ultimate facts to make this vague allegation in the first place. Complaint at 20 n.1; *see also infra* at 17–18 (explaining the insufficiency of the Receiver's vague "information and belief" pleading about investor wires).

Count II for aiding and abetting a breach of fiduciary duty and Count VII for aiding and abetting a violation of the CEA also fail because of Rule 9(b) violations.[9] Again, without knowing

---

[9] Rule 9(b) applies to these Counts. *Yuanxiao Feng v. Walsh*, 19-24138-CIV, 2020 WL 5822420, at *15 (S.D. Fla. Sept. 14, 2020), *report and recommendation adopted*, 1:19-CV-24138, 2020 WL 5819615 (S.D. Fla. Sept. 30, 2020) (applying Rule 9(b) to aiding and abetting breach of fiduciary duty claim) (citation omitted); *CFTC v. Grossman*, No. 14–civ–62061–Bloom/Valle, 2015 WL 11197766, at *5–6 (Feb. 26, 2015) (same for aiding and abetting CEA violation claim).

whether these Counts pertain to TD, CSFF, or both, nor whether the allegations pertain to Patel, Bluprint, or both, Defendants have no notice of who allegedly did what to whom and when, precluding their ability to adequately respond.

Count VI for unjust enrichment also fails under Rule 9(b) because the underlying allegations sound in fraud. *See Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1308 (11th Cir. 2022) (applying rule 9(b) to an unjust enrichment claim sounding in fraud). Under Florida law, a plaintiff bringing a claim for unjust enrichment must allege: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Id.* (citation omitted). "[T]he law of unjust enrichment requires a benefit to pass directly from the plaintiff to the defendant." *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1287 (S.D. Fla. 2013) (citing *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012)). Here, the Receiver fails to plead how Bluprint conferred a direct benefit, or even any benefit, on Defendants with the requisite particularity.[10] Given that the Receiver fails to plead how Defendants could have even known about Bluprint's existence, she fails to allege facts showing that Defendants voluntarily accepted any benefit from Bluprint, and further fails to plead what circumstances, if any, make it inequitable for Defendants to retain any fees for providing the services that Patel used. The Receiver cannot assert an unjust enrichment claim on Ms. Patel's behalf either, as there are no allegations concerning how Ms.

---

[10] While under certain circumstances a claim for unjust enrichment may be stated when a defendant has been indirectly benefited through an intermediary, that is not the case here. *See Aceto Corp.*, 953 F. Supp. 2d at 1288. Instead, the Complaint makes clear that the investors directly deposited their own funds into Patel's account without any allegations concerning Bluprint's involvement. Thus, any claim for unjust enrichment, which Defendants submit does not exist, would belong to the investors, not to Bluprint or its receiver.

Patel conferred any benefit on the Defendants. The Complaint contends that commissions and fees to unspecified Defendants came from third party investor deposits into the Patels' account. Complaint ¶ 110. Thus, any unjust enrichment claim would belong to the investors, not Ms. Patel. As such, her unjust enrichment claim must be dismissed.

### 4. Counts IV and V for Fraudulent Transfer Must Be Dismissed.

### i. The Receiver Fails to Plead that Bluprint Is a Creditor.

Only a creditor[11] has a cause of action under the Florida Uniform Fraudulent Transfer Act ("FUFTA") to recover fraudulent transfers made by their debtors:

> (1)  A transfer made or obligation incurred by a debtor is fraudulent as to a *creditor*, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (a)  With actual intent to hinder, delay, or defraud any *creditor* of the debtor; or
> >
> > (b)  Without receiving a reasonably equivalent value in exchange for the transfer or obligation…

Fla. Stat. § 726.105(1) (emphasis added).

If, for example, this case involved a situation where a corporate executive moved money from corporate accounts into his personal accounts, and then transferred those funds to a third party, the corporation would be a creditor of the executive, the executive would be the debtor, and the person who received the funds from the debtor would be the transferee. *See, e.g.*, *Dillion v. Axxsys Int'l, Inc.*, 185 F. App'x 823, 828–29 (11th Cir. 2006) (where plaintiffs invested funds in company and executives moved corporate funds, in part, to personal accounts, holding plaintiffs

---

[11] A creditor "means a person who has a claim." Fla. Stat. § 726.102(5). A claim "means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Fla. Stat. § 726.102(4).

were creditors and executives the debtors). But that is not the case here. Although the Complaint labels Bluprint a creditor in a conclusory fashion, Complaint ¶ 31, the alleged facts indicate that Patel's investors—for whom the Receiver has no standing or authority to assert claims—are creditors, not Bluprint. Specifically, the Complaint states that the investors sent money to Patel directly, wiring funds to his and his wife's personal account. *Id.* ¶¶ 77–100. Patel allegedly entered trades in his account, for which Defendants charged him. *Id.* ¶ 110. The "transfers" that form the basis of the Receiver's claims are thus Patel's payments of Defendants' alleged commissions and fees. *Id.* ¶¶ 169, 175, 182. There are no allegations, however, that Bluprint received, possessed, or gained title to the funds in question. To the contrary, Bluprint never had ownership or title to the funds. *Id.* ¶¶ 77–100.  There are thus no allegations establishing Bluprint to be a creditor such that the Receiver could assert a FUFTA claim against Defendants on its behalf. As such, the claim must be dismissed.

### ii.     The Constructive Fraudulent Transfer Claim Must Be Dismissed Because There Is No Allegation That Patel Did Not Receive Reasonably Equivalent Value.

Count V for constructive fraudulent transfer should be dismissed because the Receiver fails to plead facts showing that "the debtor made the transfer or incurred the obligation . . . [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation[.]" Fla. Stat. §§ 726.105(1), 726.105(1)(b). As noted above, Bluprint must be a creditor to assert a FUFTA claim under either 726.105(1)(a) or (b). Fla. Stat. § 726.105(1). To have a claim for constructive fraudulent transfer under subsection (b), a creditor must plead facts establishing that the debtor did not receive "a reasonably equivalent value in exchange for the transfer or obligation" that the debtor made. *See* Fla. Stat. § 726.105(1)(b); *In re Berkman*, 517 B.R. 288, 301 (M.D. Fla. 2014) ("To meet the requirement that the value was 'reasonably equivalent,' courts recognize that the analysis focuses on the benefit actually obtained by the debtor in the transaction."). Accordingly,

16

to plead a constructive fraud claim, the Receiver must allege facts showing that Patel did not obtain reasonably equivalent value for his transfers to Defendants. The Receiver fails to do this. Instead, she pleads that Bluprint (whom she conclusory labels as the "creditor") and the investors failed to receive reasonably equivalent value. Complaint ¶ 169 ("Defendant TDA received the Transfers totaling at least $414,086.96 from Patel without providing reasonably equivalent value to Bluprint or its investors in exchange for the transfers."). As such, the Receiver fails to allege that the debtor (Patel) failed to receive reasonably equivalent value and Count V should be dismissed as a result.

### iii.   The Actual Fraudulent Transfer Claim Fails Because the Receiver Fails to Plead Facts Showing that Bluprint Is a Creditor of Patel.

Count IV for actual fraudulent transfer under Florida Statutes Section 726.105(a) should be dismissed because the Receiver fails to plead facts showing that the debtor "made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]" *See* Fla. Stat. §§ 726.105(1), 726.105(1)(a). There is no allegation that Patel (the debtor) had any intent to defraud any creditor of his. Instead, the Complaint states that Patel "had the actual intent to delay, hinder, or defraud creditors of Bluprint . . . ." Complaint ¶ 174. This plainly fails to support the "actual intent" element because the statute requires an intention to defraud a creditor of the debtor, not creditors of the purported creditor—which, in this case, Bluprint is not actually a creditor of Patel's for the reasons discussed above. Even assuming that alleging a debtor's intent to defraud the creditor's creditors was sufficient, it makes no difference here because—conclusory statements reiterating the legal element of intent aside—there are no allegations establishing that the investors were creditors of Bluprint. To the contrary, the Complaint establishes that the investors wired their funds to Patel directly, bypassing Bluprint altogether. *Id.* ¶¶ 77–100.

The Receiver even concedes that she lacks the ability to plead ultimate facts indicating that the investors had any relationship with Bluprint. In fact, she specifically acknowledges that she

17

cannot plead facts indicating that Bluprint had any relationship with the wires sent to the accounts held with Defendants. *Id.* ¶ 77 n.1 ("Upon information and belief, to be confirmed during the discovery process, many of the listed incoming wire transactions indicated on their face that the money was being deposited in the Patels' accounts were from investors and earmarked for a specific purpose."). The Receiver cannot dodge her pleading requirements by alleging something "on information and belief," particularly where she implies that she needs discovery to know whether she can even make the allegation. Although "[p]leading on information and belief is still permissible where . . . the facts are 'peculiarly within the possession and control of the defendant,'" the Receiver provides no explanation as to why the investors lack information about their own wires, or why the Receiver cannot obtain this information from the very investors that she is purporting to assist (even if she lacks standing to do so). *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1311 (S.D. Fla. 2011) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)) (describing when pleading on information and belief is permissible). Indeed, if it were true that information about the wires is "peculiarly within the possession and control" of Defendants, that would only be further evidence that Bluprint had no relationship to the transactions at hand and, as a result, has no business raising claims as a purported "creditor." *See supra* at 15–16 (asserting both fraudulent transfer claims should be dismissed because Bluprint pleads no facts establishing itself as a creditor). Thus, the Court should dismiss Count IV.

**5.      Count VII for Aiding and Abetting a CEA Violation Should Be Dismissed Because the Receiver Has No Statutory Entitlement to Recovery and Fails to Adequately Plead Intent.**

**i.      The Aiding and Abetting CEA Claim Should Be Dismissed Because the Receiver Pleads that Patel Entered Trades for Investors, Not Bluprint.**

Section 22(a) of the CEA gives a private right of action *to the customer* of the alleged aider or abettor. *See* 7 U.S.C. § 25(a)(1). Specifically, "[a]ny person . . . who willfully aids . . . shall be

liable . . . to any other person" who enters into a contract or transaction listed in subparts (B) or (C) of the statute with or through the "such person" mentioned in the subparts. *Id.* The "such person" mentioned in subparts (B) and (C) is the primary violator—here, allegedly Patel—who entered the trades. *Damato v. Hermanson,* 153 F.3d 464, 470–71 (7th Cir. 1998).

Count VII must be dismissed because the investors are the only individuals or entities who allegedly "made through [Patel] any contract of sale of any commodity for future delivery" or "purchased from . . . or placed through [Patel] an order . . . ." *See* 7 U.S.C. § 25(a)(1)(B)–(C). In particular, the Receiver alleges that Patel's investors wired funds directly to his personal account—not to Bluprint which had no accounts with Defendants—and that Patel engaged in trading on their behalf. Complaint ¶¶ 44, 77–99, 112, 114, 194, 199. She pleads no facts indicating that Patel entered into any of the trades or contracts in subparts (B) or (C) for Bluprint. Accordingly, any private right of action in Section 22(a) belongs not to Bluprint, but to Patel's investors, who the Receiver does not represent and for whom she has no authority to assert any claims. As such, Count VII must be dismissed.

> ### ii.     The Aiding and Abetting CEA Claim Should Be Dismissed Because the Receiver Fails to Adequately Plead the Required Intent.

"[B]oth the CFTC and courts have determined that the standard for aiding and abetting liability under the CEA is that same as that for aiding and abetting under federal criminal law." *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 181 (2d Cir. 2013). "[I]n order to state a claim for aiding and abetting under the CEA, the [plaintiff] must allege that [the defendant] '(1) had knowledge of the principal's intent to commit a violation of the Act; (2) had the intent to further that violation; and (3) committed some act in furtherance of the principal's objective.'" *CFTC*, 2015 WL 11197766, at *4 (quoting *Damato*, 153 F.3d at 473). This requires "not only knowledge of the principal's objective *but a desire to help him obtain it*." *Id.* (emphasis added)

(citation omitted).

The Receiver attempts to satisfy the intent element by pleading that Defendants must have known about the Ponzi scheme because banking regulations and rules purportedly suggest that third-party wires and changes in account trading constitute a Ponzi scheme. Complaint ¶¶ 76, 67–76. The Receiver additionally alleges that Defendants "aided and abetted" Patel by clearing his trades on their platforms and by failing to investigate the Patels, non-customer Bluprint, or the "high-volume third-party transfers into the Brokerage Account" held only with TD, not CSFF. *Id.* ¶ 191, 197–98. This is insufficient.

As a matter of law, allegations that Defendants *should have known* about the Ponzi scheme fail to satisfy the actual knowledge element of aiding and abetting liability under the CEA. *E.g.*, *In re Amaranth*, 730 F.3d at 185; *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 255–56 (5th Cir. 2011). This is particularly true where the facts pled are consistent with innocent conduct. Without the benefit of hindsight, it could be concluded that Patel used his account to receive legitimate payments, or that his increased trading was the result of an improvement in finances or dissatisfaction with another brokerage firm. The possibilities are endless, but the point remains the same: as a matter of law, nothing about the account activity alleged confers actual knowledge of a criminal Ponzi scheme. *In re Amaranth*, 730 F.3d at 185 (where activity suggested either a CEA violation or innocent behavior, holding the activity "strains any inference that J.P. Futures *actually knew*—as opposed to, for example, that J.P. Futures simply *should* have known— that" a CEA violation was occurring) (emphasis in the original). Ultimately, the Receiver pleads nothing showing that Defendants *actually knew* of the Ponzi scheme, and courts have repeatedly rejected allegations that failure to adequately investigate or supervise account activity establishes actual knowledge. *See Lamm v. State Street Bank & Trust,* 749 F.3d 938, 950 (11th Cir. 2014); *In*

*re Amaranth*, 730 F.3d at 182–84; *Nicholas v. Saul Stone & Co.*, 224 F.3d 179, 180–82, 189–90 (3rd Cir. 2000); *Damato*, 153 F.3d at 473 n.12; *Isaiah v. JPMorgan Chase Bank, N.A.*, No. 16-CIV-21771-MARTINEZ, 2017 WL 5514370, at *3 (S.D. Fla. Nov. 15, 2017).

Furthermore, the Receiver fails to allege facts establishing that Defendants had an "intent to further" a Ponzi scheme or committed "some act in furtherance of . . . [Patel's] objective." *CFTC*, 2015 WL 11197766, at *4 (citation omitted). The only affirmative act alleged is that Patel used Defendants' platforms to enter trades. Complaint ¶ 191. Such a routine act fails to constitute an act in furtherance, and courts have again repeatedly rejected the argument that providing routine banking or clearing services constitutes acts in furtherance, or demonstrates a desire to assist a wrongdoer's objective. *E.g.*, *In re Amaranth*, 730 F.3d at 183–85; *Isaiah*, 2017 WL 5514370, at *4.

Accordingly, Count VII should be dismissed because the Receiver lacks the ability to raise the claim on behalf of Bluprint and further fails to plead facts sufficient to show that Defendants had actual knowledge of Patel's Ponzi scheme, possessed the required, specific intent to help him advance his scheme, and took actions to further his objective.

### 6.    Count II for Aiding and Abetting a Breach of Fiduciary Duty Must Be Dismissed for Failure to Plead Facts Sufficient to State a Claim.

In Florida, to assert an aiding and abetting claim for breach of fiduciary duty, "a plaintiff must allege: (1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abett[o]r; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012). The standard is virtually identical to the federal standard for asserting an aiding and abetting claim under the CEA—the standard that applies to Count VII discussed above. *CFTC*, 2015 WL 11197766, at *4. Both standards require *actual*

knowledge. *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013) (Under Florida standard, "[i]n actions involving the liability of a bank for aiding and abetting its customer's Ponzi scheme, the second element, knowledge, will only be satisfied if the bank had 'actual knowledge of [the] fraudulent activities.'") (quoting *Lawrence*, 455 F. App'x at 907); *Amacker*, 657 F.3d at 255–56 (actual knowledge required under CEA).

The aiding and abetting a breach of fiduciary duty claim asserted on behalf of Bluprint fails for all of the reasons that the aiding and abetting claim under the CEA fails: the allegations are insufficient to satisfy the requisite knowledge, intent, and assistance elements. *Supra* at 19–21. Just as they have in the CEA context, Florida courts have repeatedly recognized the deficiencies of allegations precisely like those here. For example, in *Lawrence*, the Eleventh Circuit rejected an aiding and abetting claim for breach of fiduciary duty remarkably similar to the one asserted on behalf of Bluprint in this case. 455 F. App'x at 905–907. The plaintiffs in *Lawrence* alleged that Bank of America had actual knowledge of fraudster Beau Diamond's Ponzi scheme because of "exceptionally large deposits," large wires out of the account, trading commissions paid, and "atypical" transactions. *Id.* The Eleventh Circuit, however, determined that, as a matter of law, these allegations failed to establish a claim for aiding and abetting:

> Plaintiffs alleged that Bank of America authorized numerous deposits, withdrawals, and wire transfers involving large amounts of money and that the Premier Banking Representatives received substantial commissions. Although Plaintiffs alleged the transactions were atypical and therefore Bank of America should have known of the Ponzi scheme, such allegations are insufficient under Florida law to trigger liability. Florida law *does not require banking institutions to investigate transactions*. *Home Fed. Sav. & Loan Ass'n of Hollywood v. Emile*, 216 So. 2d 443, 446 (Fla. 1968); *cf. O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1205 (11th Cir. 2003) (finding that banks have the "right to assume that individuals who have the legal authority to handle the entity's accounts do not misuse the entity's funds"). Therefore, Bank of America, in providing only routine banking services, was not required to investigate Diamond's transactions. To be liable, the bank would have had to have actual knowledge of Diamond's fraudulent activities. These allegations simply fail to make that "plausible." *Twombly*, 550 U.S. at 570.

*Lawrence*, 455 F. App'x at 907 (emphasis added).

Like *Lawrence*, the Complaint's allegations that Defendants purportedly failed to conduct due diligence, investigate transactions, or capture the complained-of activity cannot support the actual knowledge element required to state an aiding or abetting claim under Florida law. *Id.*; *Lamm,* 749 F.3d at 950 ("Alleging that a bank disregarded 'red flags' such as 'atypical activities' on a customer's account is insufficient to establish knowledge."); *Isaiah*, 2017 WL 5514370, at *3 ("Allegations that a bank failed to adhere to an appropriate standard of care or to follow relevant policies, procedures, or regulations are likewise insufficient to demonstrate actual knowledge for the purposes of an aiding and abetting claim."). As such, Count II must be dismissed.

### 7. Count VIII Must Be Dismissed Because There Is No Private Right of Action for the Enforcement of 17 CFR Section 1.55(a).

The Receiver alleges, on behalf of Ms. Patel, that Defendants violated 17 CFR Section 1.55(a) because they did not furnish written disclosures to her prior to opening accounts for her and her husband, Patel. Even if those allegations were true, however, only the CFTC can enforce the regulatory provision in question, and courts have concluded that no private right of action exists as "Congress did not intend that the rules promulgated by the CFTC should give rise to a private cause of action." *Khalid Bin Alwaleed Foundation v. E.F. Hutton & Co., Inc.*, 709 F. Supp. 815, 818–20 (N.D. Ill. 1989) (specifically addressing 17 CFR Section 1.55(a)); *Buckmaster v. Rosenthal Collins Grp., L.L.C.*, No. CIV-05-1227-R, 2006 WL 8436520, at *2 (W.K. Okla. Sept. 27, 2006) ("The weight of authority holds that there is no private right of action for violations of CFTA rules and regulations."); *Gunderson v. ADM Inv. Servs., Inc.*, C96–3148–MWB, 2001 WL 624834, at *12 (N.D. Iowa Feb. 13, 2001) ("Neither Section [6a] nor Section 22 authorize private enforcement of CFTC regulations, nor have the courts been willing to recognize such a claim.") (alteration in

original).[12] Because no private cause of action exists, Count VIII should thus be dismissed.

### 8. Patel, Ms. Patel, and Bluprint's Claims Must Be Dismissed Because the Complaint Fails to Establish Damages As a Matter of Law.

As noted above, the Complaint fails to plead facts showing Bluprint, Patel, or Ms. Patel suffered an injury-in-fact—a critical element to each of their claims. *Supra* at 1 to 8. Without an injury in fact, Patel, Ms. Patel, and Bluprint have no damages, and, without damages, the Receiver cannot state claims on their behalf, warranting dismissal under Rule 12(b)(6).

The injury in fact "question [addresses] . . . *whether* a plaintiff was harmed" and "the damages question [addresses] . . . *by how much* a plaintiff was harmed." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107 n.11 (2d Cir. 2007) (emphasis in original). If the answer to the former question, however, is that a Plaintiff was not harmed, then the "how much" answer is zero. *Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877, 896 (N.D. Cal. 2016) ("Thus, to the extent that Defendants had a fiduciary duty to Plaintiffs, Plaintiffs have no damages and therefore have no standing."). Without damages, all claims asserted by the Receiver on behalf of Bluprint, Patel, and Ms. Patel fail as a matter of law and must be dismissed. *Hakim-Daccach v. Knauf Intern. GmbH*, No. 17-20495-Civ-Scola, 2017 WL 5634629, at *6 (S.D. Fla. Nov. 22, 2017) (aiding and abetting breach of fiduciary duty requires breach of fiduciary duty, and plaintiff must plead causation and damages to establish the breach); *Bartsch v. Costello*, 170 So. 3d 83, 86 (Fla. 4th DCA 2015) (negligence claim requires damages); *Bedwell v. Rucks*, 127 So. 3d 533, 535 (Fla. 4th DCA 2012) ("A 'claim' under the Fraudulent Transfer Act 'means a right to payment . . . .'") (quoting Fla. Stat. § 726.102(4)); *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1334 (S.D. Fla.

---

[12] While the Eleventh Circuit stated, in a brief aside, that there "probably" is a cause of action for violations of CFTC regulations, *Irvine v. Cargill Inv. Servs., Inc.*, 799 F.2d 1461, 1462 n. 3 (11th Cir. 1986), courts have recognized this as non-binding dicta and "not supported by any analysis." *Buckmaster*, 2006 WL 8436520, at *2; *Farmland Indus. v. Frazier-Parrott Commodities, Inc.*, 871 F.2d 1402, 1409 (8th Cir. 1989) (describing Eleventh Circuit's statement as dicta).

2007) ("Damages are also an element of claims for . . . unjust enrichment under Florida and New York law."); 7 U.S.C. § 22(a)(1) (establishing aiding and abetting liability "for actual damages").

## III.    CONCLUSION

Based on the foregoing, the Receiver's Complaint should be dismissed.

Respectfully submitted,

By: /s/ *Daniel S. Newman*
Daniel S. Newman, Esq.
Florida Bar No. 0962767
Andrew Fuller, Esq.
Florida Bar No. 1021164
NELSON MULLINS
One Biscayne Tower, 21st Floor
2 S. Biscayne Boulevard
Miami, FL  33131
Telephone: 305.373.9400
Facsimile: 305.373.9443
dan.newman@nelsonmullins.com
andrew.fuller@nelsonmullins.com

and

Christina Lehm, Esq.
Florida Bar No. 112596
NELSON MULLINS
One Financial Plaza, Suite 2700
100 S.E. Third Avenue
Fort Lauderdale, Florida 33394
Telephone: 954-745-5287
Fax: 954-761-8135
christina.lehm@nelsonmullins.com

*Counsel for Defendants TD Ameritrade, Inc. and Charles Schwab Futures and Forex LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of May, 2023, I electronically filed the foregoing with the Clerk of Court of the United States District Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record appearing on the Certificate of Service generated by the ECF system.

*/s/ Daniel S. Newman*
Daniel S. Newman, Esq.
Florida Bar No. 0962767

4888-3661-2961 v.17 032795/01502